UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

* * *

| | |
|---|---|
| PAUL KAYLOR,<br><br>                Plaintiff,<br><br>    v.<br><br>DOUGLAS COUNTY, *et al.*,<br><br>                Defendants. | Case No. 3:14-cv-00651-MMD-WGC<br><br>ORDER |

**I.  SUMMARY**

Plaintiff Paul Kaylor sued Defendants, officials involved in his arrest and prosecution for trespassing while on vacation at a casino in Stateline (South Lake Tahoe area), Nevada, alleging they violated his constitutional rights and interfered with his employment as a police officer back home in Pennsylvania. Before the Court is Defendants' motion for summary judgment ("Motion") with respect to all of Plaintiff's claims.[1] (ECF No. 43.) As explained below, the Court will grant Defendants' Motion in part because some of Plaintiff's constitutional claims are *Heck*[2]-barred, the strip search Plaintiff underwent at the jail in Minden, Nevada after being arrested was not unconstitutional, and Defendants are entitled to summary judgment regarding Plaintiff's tort claim against defendant Maria Pence. However, the Court will also deny Defendant's Motion in part with respect to Plaintiff's tort claim against defendant Kevin Karosich because a material factual dispute remains as to whether he contacted Plaintiff's employer with the intent to disrupt Plaintiff's employment.

---

[1] The Court has also reviewed Plaintiff's response (ECF No. 51), and Defendants' reply (ECF No. 61), along with their corresponding exhibits, and Plaintiff's related errata (ECF No. 60).

[2] *Heck v. Humphrey*, 512 U.S. 477 (1994).

## II. BACKGROUND[3]

In December of 2012, Plaintiff was on vacation from his job as a police officer in Pennsylvania at Harrah's Hotel and Casino in Stateline, Nevada. (ECF No. 39 at 2.) Specifically, at the time, Plaintiff worked for the McCandless Police Department in Pennsylvania ("PA Police"). (ECF No. 43-1 at 3.) From the evening of Friday, December 14, 2012 until around 8 a.m. on Saturday, December 15, 2012, Plaintiff played roulette at Harvey's Hotel and Casino—across the street from, and under common ownership with, Harrah's (collectively, the "Casino")—while he drank beer and tequila. (*Id.* at 3-6.) Around 8 a.m. that Saturday morning, the roulette dealer at Plaintiff's table told Casino security that Plaintiff had too much to drink and could no longer follow the rules of the game. (*Id.* at 19.) Another Casino employee then told Plaintiff he could not have any more drinks, and asked Plaintiff to return to his hotel room. (*Id.*) Plaintiff refused and argued with the Casino employee, who called security to bring Plaintiff back to his room. (*Id.*)

When Casino security arrived, Plaintiff had left the roulette table and was sitting in a nearby bar. (*Id.* at 18.) Casino security unsuccessfully tried to get Plaintiff to go back to his room, and gave him nine warnings that they would arrest him for trespass if he did not comply. (*Id.*) After that ninth warning was also unsuccessful, Casino security handcuffed Plaintiff and took him to the security office at Harrah's. (*Id.*) In doing so, Casino security effectuated a citizens' arrest of Plaintiff for trespass under Nevada law. (*Id.* at 32.)

Casino security then called the Douglas County Sheriff's Office, who dispatched defendant Sherriff's Deputy Kevin Karosich to the Casino. Karosich soon learned after talking to Plaintiff that Plaintiff was a police officer, and negotiated a deal with Casino security to not press charges if Plaintiff would quietly go back to his room out of an apparent sense of loyalty to his fellow police officer. (*Id.* at 39-42.) Plaintiff refused the deal, and he and Karosich argued about Plaintiff's arrest, their relative experience as police officers, and how Karosich should be conducting their interaction. (*Id.* at 41-45.)

---

[3]These background facts are undisputed unless otherwise noted.

After they had argued for a while, Karosich took Plaintiff from the Casino to the local police station and dropped him off there. (*Id.* at 8.) After some time at the police station, Plaintiff was brought before a Nevada state judge—who came to the police station—who arraigned Plaintiff and explained Plaintiff could be released if he blew into a portable breath tester ("PBT") that indicated Plaintiff's blood alcohol level was below a certain amount. (*Id.* at 9-10.) Plaintiff apparently refused to submit to a PBT test, and was therefore taken from the police station down to a Douglas County jail in Minden, Nevada (the "Jail"). (ECF No. 43 at 6.)

The Jail operates under a Douglas County policy providing that all inmates must undergo an unclothed search when they first arrive before they are placed in general population. (ECF No. 43-1 at 61, 58-63 (the whole policy).) When Plaintiff arrived at the Jail, defendant Sargent Phil Lesquereaux, who oversaw the Jail, ordered defendant Deputy Coleman and defendant Deputy O'Sullivan to strip search Plaintiff pursuant to Douglas County policy. (ECF No. 43 at 6.) Deputy Coleman commenced the search by orally instructing Plaintiff to remove his clothes. (*Id.*) He then visually inspected parts of Plaintiff's body, and orally instructed Plaintiff to both lift his scrotum (to allow inspection), and spread his buttocks and cough. (*Id.* at 6-7.) Deputy O' Sullivan's job was to watch the search take place; he was in the room, but did not actively participate in it. (*Id.*) The search was conducted in a room out of anyone else's sight, with no cameras, and lasted about three minutes. (*Id.*)

Plaintiff was later charged and convicted under Nevada law of misdemeanor criminal trespass stemming from these events, following a bench trial before the Tahoe Township Justice Court. (ECF No. 43-1 at 65.) The Deputy District Attorney who was assigned to prosecute Plaintiff's criminal case—and did—was defendant Maria Pence. (ECF No. 43 at 7 n.1.) Plaintiff appealed his conviction, but it was affirmed (ECF No. 43-1 at 66-72), and the Nevada Supreme Court denied Plaintiff's corresponding petition for a writ of certiorari (*id.* at 73-75).

Plaintiff filed this case under 42 U.S.C. § 1983, alleging that his arrest at the Casino and booking for trespass, and the strip search at the Jail, violate his rights under the First Amendment because these actions were taken to retaliate against him for exercising his right to free speech—primarily arguing with Karosich, and to some extent anything Plaintiff said to Lesquereaux, Coleman, and O'Sullivan. (ECF No. 39 at 8-9.) He further alleges that the strip search at the Jail violates his rights under the Fourth and Fourteenth Amendments because it was unreasonable—so unreasonable that it would shock the conscience of a reasonable person. (*Id.* at 8.) Plaintiff also alleges that Karosich and Pence are liable to him in tort for intentional interference with an existing economic relationship ("interference") because—as further explained below—they contacted the PA Police regarding his trespassing arrest, booking, and conviction, which ultimately caused Plaintiff to suffer a three-day unpaid suspension at work. (*Id.* at 7; *see also* ECF No. 51 at 14.) Defendants moved for summary judgment on all three of Plaintiff's claims, which Plaintiff opposes. (ECF Nos. 43, 51.)

### III. LEGAL STANDARD

"The purpose of summary judgment is to avoid unnecessary trials when there is no dispute as to the facts before the court." *Nw. Motorcycle Ass'n v. U.S. Dep't of Agric.*, 18 F.3d 1468, 1471 (9th Cir. 1994). Summary judgment is appropriate when the pleadings, the discovery and disclosure materials on file, and any affidavits "show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). An issue is "genuine" if there is a sufficient evidentiary basis on which a reasonable fact-finder could find for the nonmoving party and a dispute is "material" if it could affect the outcome of the suit under the governing law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Where reasonable minds could differ on the material facts at issue, however, summary judgment is not appropriate. *See id.* at 250-51. "The amount of evidence necessary to raise a genuine issue of material fact is enough 'to require a jury or judge to resolve the

parties' differing versions of the truth at trial.'" *Aydin Corp. v. Loral Corp.*, 718 F.2d 897, 902 (9th Cir. 1983) (*quoting First Nat'l Bank v. Cities Serv. Co.*, 391 U.S. 253, 288-89 (1968)). In evaluating a summary judgment motion, a court views all facts and draws all inferences in the light most favorable to the nonmoving party. *See Kaiser Cement Corp. v. Fishbach & Moore, Inc.*, 793 F.2d 1100, 1103 (9th Cir. 1986).

The moving party bears the burden of showing that there are no genuine issues of material fact. *Zoslaw v. MCA Distrib. Corp.*, 693 F.2d 870, 883 (9th Cir. 1982). Once the moving party satisfies Rule 56's requirements, the burden shifts to the party resisting the motion to "set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 256. The nonmoving party "may not rely on denials in the pleadings but must produce specific evidence, through affidavits or admissible discovery material, to show that the dispute exists," *Bhan v. NME Hosps., Inc.*, 929 F.2d 1404, 1409 (9th Cir. 1991), and "must do more than simply show that there is some metaphysical doubt as to the material facts." *Orr v. Bank of Am., NT & SA*, 285 F.3d 764, 783 (9th Cir. 2002) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)). "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient." *Anderson*, 477 U.S. at 252.

## IV. DISCUSSION

As noted, the Court will grant Defendants' Motion with respect to Plaintiff's constitutional claims, and will grant in part and deny in part Defendants' Motion with respect to Plaintiff's tort claim. The Court addresses Defendants' Motion as it applies to each of Plaintiff's three claims, in turn, below.

### A. FIRST AMENDMENT RETALIATION CLAIM REGARDING THE ARREST, BOOKING AND STRIP SEARCH

Defendants argue they are entitled to summary judgement on Plaintiff's First Amendment retaliation claim for several reasons, among them that Plaintiff's First Amendment retaliation claim is barred by the *Heck* doctrine. (ECF No. 43 at 20-21.)

Plaintiff responds that the *Heck* doctrine does not bar his First Amendment retaliation claim. (ECF No. 51 at 25-26.) The Court agrees with Defendants. Because the Court finds the *Heck* doctrine bars Plaintiff's First Amendment retaliation claim, the Court does not address any of the parties' other arguments as to this claim.

In *Heck*, the Supreme Court held that "in order to recover damages for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus[.]" 512 U.S. at 486-87 (footnote omitted). However, "if the district court determines that the plaintiff's action, even if successful, will *not* demonstrate the invalidity of any outstanding criminal judgment against the plaintiff, the action should be allowed to proceed, in the absence of some other bar to the suit." *Id.* at 487 (emphasis in original and footnotes omitted). "*Heck*, in other words, says that if a criminal conviction arising out of the same facts stands and is fundamentally inconsistent with the unlawful behavior for which section 1983 damages are sought, the 1983 action must be dismissed." *Smithart v. Towery*, 79 F.3d 951, 952 (9th Cir. 1996).

This is such a case with respect to Plaintiff's First Amendment retaliation claim. Plaintiff was arrested and booked for trespass, and was then subjected to a strip search upon his arrival at the Jail per the Jail's standard policy after he declined a PBT test. (ECF No. 43 at 6; *see also* ECF No. 43-1 at 61.) Because the search was required by Jail policy, it naturally followed from Plaintiff's arrest and his refusal to take a PBT test. Plaintiff's conviction for trespass—which he took through trial and appeal—stands. (ECF No. 43-1 at 64-75.) Plaintiff's argument that the real motivation for his arrest, booking, and search was to retaliate against him for protesting his arrest is fundamentally inconsistent with the simple fact of his criminal conviction arising out of the same operative facts. Plaintiff's

theory underlying this claim appears to be that his arrest and consequent actions against him were illegitimate, but his conviction indicates otherwise. Plaintiff cannot challenge the validity of his arrest, detention, and consequent search in this Section 1983 case. *See Smithart*, 79 F.3d at 952 ("There is no question that Heck bars [Plaintiff's] claims that defendants lacked probable cause to arrest him and brought unfounded criminal charges against him. [Plaintiff] may challenge the validity of his arrest, prosecution and conviction only by writ of habeas corpus.") (internal citations omitted). Thus, Plaintiff's First Amendment retaliation claim is barred under the *Heck* doctrine.

### B. FOURTH AMENDMENT UNREASONABLE STRIP SEARCH CLAIM

Plaintiff also challenges the strip search at the Jail on Fourth and Fourteenth Amendment grounds. (ECF No. 39 at 8.) Plaintiff does not appear to challenge the fact that Plaintiff was searched when he arrived at the Jail with respect to this claim, but instead alleges that the search as conducted was excessive and unreasonable—that Plaintiff should have been merely patted down or have been subjected to some other less intrusive form of search.[4] (ECF No. 39 at 8; *see also* ECF No. 51 at 17-22.) Defendants argue that the strip search was reasonable and did not violate Plaintiff's Fourth or Fourteenth Amendment rights. (ECF No. 43 at 14-18.) Here, again, the Court agrees with Defendants.

Defendants have satisfied their burden to show that the strip search was conducted in accordance with Douglas County policy, and was no more intrusive than necessary to ensure that Plaintiff had no contraband on him before he was introduced into the Jail's general population. (ECF No. 43-1 at 55-56 (stating that Plaintiff was being placed in general population); *see also id.* at 79-80 (stating that search was conducted to look for contraband, behind closed doors, and without any cameras, and that the search was documented in a report); *see also id.* at 12-13 (stating that the officers conducting the

---

[4]Because Plaintiff challenges the strip search as unreasonable and excessive, this claim is not necessarily *Heck*-barred. *Heck*, 512 U.S. at 487 n.7; *see also Bryant v. Donohue*, Case No. 2:16-cv-01172-GMN-PAL, 2018 WL 3997256, at *3 (D. Nev. Aug. 21, 2018).

7

search did not touch Plaintiff and conducted the search in a professional manner).) Further, the Court finds that Douglas County's unclothed search policy (*id.* at 58-63) is not unconstitutional as applied to the facts of this case. *See Bull v. City & Cty. of San Francisco*, 595 F.3d 964, 975 (9th Cir. 2010) (finding that analogous strip search policy did not violate plaintiff class members' Fourth Amendment rights); *Florence v. Bd. of Chosen Freeholders of Cty. of Burlington*, 566 U.S. 318, 339 (2012) (same). Thus, Defendants are entitled to summary judgment with respect to Plaintiff's Fourth and Fourteenth Amendment claim challenging the strip search at the Jail.

### C. TORT CLAIM

Plaintiff also asserts a tort claim for interference. While it is unclear in the operative Complaint (ECF No. 39 at 7), this claim is asserted against only Karosich and the prosecuting Deputy District Attorney Pence. (ECF No. 51 at 13-17.) The Court addresses Plaintiff's tort claim regarding both defendants separately, below.

"Intentional interference with contractual relations[5] under Nevada law requires the plaintiff to establish five elements: '(1) a valid and existing contract; (2) the defendant's knowledge of the contract; (3) intentional acts intended or designed to disrupt the contractual relationship; (4) actual disruption of the contract; and (5) resulting damage.'" *Klein v. Freedom Strategic Partners, LLC*, 595 F. Supp. 2d 1152, 1162 (D. Nev. 2009) (quoting *J.J. Indus., LLC v. Bennett*, 71 P.3d 1264, 1267 (Nev. 2003) (quotation omitted)). These elements necessarily inform the discussion below with respect to Plaintiff's tort claim against Karosich and Pence.

///

///

---

[5]Plaintiff characterized his interference claim as one for intentional interference with an existing economic relationship. (ECF No. 39 at 7.) However, the parties briefed this claim as one for interference with contractual relations under the standard cited here. (ECF Nos. 43 at 11, 51 at 15.) Further, the parties appear to agree that a valid contract, likely an employment agreement, existed between Plaintiff and the PA Police, enabling an interference with contractual relations claim. Thus, the Court assumes without deciding that a valid contract existed between Plaintiff and the PA Police that gives rise to Plaintiff's interference claim here, and analyzes Plaintiff's claim accordingly.

### 1. Pence

Defendants are entitled to summary judgment on Plaintiff's tort claim against prosecuting Deputy District Attorney Pence. Defendants argue that Pence is immune from Plaintiff's tort claim against her because of the doctrine of prosecutorial immunity. (ECF No. 43 at 8-10, 10 n.2.) Defendants insist that any contact Pence made with the PA Police was done in her prosecutorial capacity and in connection with presenting the state's case against Plaintiff. (ECF No. 43 at 10.) Plaintiff counters that contacting the PA Police was not part of her function as a prosecutor, and thus Pence is not entitled to prosecutorial immunity with respect to Plaintiff's tort claim. (ECF No. 51 at 15.)

The evidence before the Court does not even establish whether Pence contacted the PA Police (or was contacted by them), much less whether she intended to disrupt Plaintiff's employment in doing so. Plaintiff represents that Pence contacted the PA Police, but the evidence Plaintiff cites—pages from the transcript of Plaintiff's deposition—instead tends to show that the PA Police contacted her. (ECF No. 51 at 14 (citing ECF No. 43-1 at 14-15).) Defendants also state that the PA Police contacted Pence, but cite to an exhibit that does not appear to exist. (ECF No. 61 at 18-19 (citing Exhibit 13 of ECF No. 43-1, but ECF No. 43-1 does not contain an Exhibit 13).) In addition, there is no evidence currently before the Court as to Pence's intent, if she did contact the PA Police.

Lacking any evidence that Pence initiated contact with the PA Police with improper intent, the Court agrees with Defendants. "Absolute prosecutorial immunity exists if the prosecutor acts within the scope of his or her authority and in a quasi-judicial capacity." *Ybarra v. Reno Thunderbird Mobile Home Vill.*, 723 F.2d 675, 678 (9th Cir. 1984). Given the evidence before the Court, the Court finds that Pence acted within the scope of her authority in contacting the PA Police in the course of prosecuting and obtaining Plaintiff's conviction for criminal trespass. Thus, the Court grants summary judgment to Defendants

on the ground of absolute prosecutorial immunity with respect to Plaintiff's tort claim against Pence.[6]

### 2. Karosich

But Defendants are not entitled to summary judgment with respect to Plaintiff's tort claim against Karosich. The evidence proffered by Defendants regarding Karosich does not show that he did not intend to disrupt Plaintiff's employment contract with the PA Police, which leaves Plaintiff with a plausible basis for establishing Karosich's liability for interference. It is undisputed that Karosich knew Plaintiff was a police officer employed by the PA Police. (ECF No. 43-1 at 40, 43.) It is also undisputed that Karosich called the PA Police shortly after he dropped Plaintiff off at the police station near Lake Tahoe and spoke with Sergeant Itri. (*Id.* at 43.) Karosich told Sergeant Itri that he had arrested Plaintiff for trespassing. (*Id.*)

Intent is a key aspect of one of the elements necessary to establish intentional interference with contractual relations. *See Klein*, 595 F. Supp. 2d at 1162. Both parties point to the same evidence—a page of the transcript from Karosich's deposition—to establish that Karosich either did or did not intend to interfere with Plaintiff's employment when he called the PA Police. (ECF Nos. 43 at 11, 51 at 14 (citing ECF No. 43-1 at 43).) But that page of the transcript does not show what either party would like it to: it merely shows that Karosich knew telling the PA Police about his arrest of Plaintiff *could* affect Plaintiff's job. (ECF No. 43-1 at 43.) Indeed, Karosich stated he knew that his arrest of Plaintiff "could potentially affect his job." (*Id.*) Viewing this evidence in the light most favorable to Plaintiff—and drawing all reasonable inferences in his favor—a material issue of fact exists as to whether Karosich contacted the PA Police with the intent to disrupt Plaintiff's employment.

---

[6]Plaintiff also made a meritless argument that Pence waived her ability to assert absolute prosecutorial immunity because Defendants did not include it as a defense in their answer to the operative Complaint. (ECF No. 51 at 14.) Assuming without deciding they had to, Defendants did include absolute immunity as an affirmative defense in their applicable answer. (ECF No. 40 at 7.)

Defendants also argue that Plaintiff's tort claim against Karosich fails as a matter of law because he cannot establish the 'actual disruption' element—because Plaintiff was not ultimately fired from his job. (ECF No. 43 at 11-12.) Plaintiff responds that his employment was actually disrupted—he was suspended for three days without pay. (ECF No. 51 at 14.) The Court assumes without deciding that Plaintiff's three-day unpaid suspension could constitute an actual disruption, because Defendants have not carried their burden to show that it was not—and neither party cites any law or evidence that definitively tips the analysis one way or the other.

Defendants further argue that Karosich's phone call did not actually disrupt Plaintiff's employment because the PA Police would have found out about the arrest and suspended him regardless of the phone call (ECF No. 61 at 19), but also fail to support that argument with any admissible evidence. Defendants could have, for example, proffered a PA Police policy requiring its officers to report any time they are arrested, or proffered some evidence that the PA Police suspended Plaintiff's employment as a result of its independent investigation and did not rely on the information from Karosich, but Defendants have not.

Finally, Defendants argue that Plaintiff's claims against Karosich are barred by the doctrine of discretionary act immunity codified in NRS § 41.031. (ECF No. 43 at 12-14.) Plaintiff responds that this doctrine does not bar his claim because it does not apply to intentional torts or bad faith misconduct. (ECF No. 51 at 16-17.) With respect to this argument, and given the evidence before the Court at this time, the Court agrees with Plaintiff. "Where an officer's actions are attributable to bad faith, immunity does not apply whether an act is discretionary or not." *Sandoval v. Las Vegas Metro. Police Dep't*, 756 F.3d 1154, 1168 (9th Cir. 2014) (applying Nevada law and reversing grant of summary judgment to police officer defendants) (internal quotations and citations omitted). At this stage of the litigation, and viewing the evidence in the light most favorable to Plaintiff as the non-moving party, the Court can only say that Plaintiff alleges Karosich acted in bad

faith in contacting the PA Police (ECF No. 39 at 7), and Defendants have proffered insufficient evidence to show that defendant Karosich *did not* act in bad faith in contacting the PA Police (ECF No. 43 at 12-14 (failing to cite to any admissible evidence)). Thus, the Court will defer ruling on Defendants' discretionary act immunity argument at this time.

In sum, the Court grants summary judgment to Defendants with respect to Plaintiff's constitutional claims, but grants in part and denies in part Defendants' Motion with respect to Plaintiff's tort claim.

**V. CONCLUSION**

The Court notes that the parties made several arguments and cited to several cases not discussed above. The Court has reviewed these arguments and cases and determines that they do not warrant discussion as they do not affect the outcome of Defendant's Motion.

It is therefore ordered that Defendant's motion for summary judgment (ECF No. 43) is granted in part, and denied in part. It is granted with respect to Plaintiff's constitutional claims against all Defendants and Plaintiff's tort claim against all Defendants, except for Defendant Kevin Karosich; it is denied with respect to Plaintiff's tort claim for interference as to defendant Karosich only. Thus, the only claim remaining for trial is Plaintiff's tort claim against Karosich.

DATED THIS 6th day of December 2018.

_____
MIRANDA M. DU
UNITED STATES DISTRICT JUDGE